UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

BRYSAN HARRIS                                    CIVIL ACTION NO. 15-0761

VERSUS                                           JUDGE ROBERT G. JAMES

CITY OF BASTROP, ET AL.                          MAG. JUDGE KAREN L. HAYES

<u>RULING</u>

Plaintiff Brysan Harris ("Harris") filed this suit against Defendants the City of Bastrop, the Police Department of Bastrop ("Bastrop Police Department"), Officer Dennis Keith Aswell ("Aswell"), and Officer Steven R. Rawls ("Rawls") (referred to collectively as "Defendants") for alleged violations of 42 U.S.C. § 1983 ("Section 1983"), 42 U.S.C. § 1985(3) ("Section 1985"), and state law arising from an incident in which the officers tased and arrested Harris.

Pending before the Court is Defendants' Motion for Summary Judgment [Doc. No. 11] seeking dismissal of all claims. For the following reasons, the motion is GRANTED IN PART and DENIED IN PART. Further, the Court gives notice of its intent to *sua sponte* DISMISS the Bastrop Police Department because it is not an entity capable of being sued.

I.     FACTS AND PROCEDURAL HISTORY

On March 29, 2014, Harris was staying at the Country Inn Motel in Bastrop, Louisiana. Harris went to the front desk to complain to the desk clerk, Monica Goodwin ("Goodwin"), about excessive noise coming from an adjacent room in the motel. Goodwin told him that she, too, heard the noise and would take care of it. Nevertheless, the noise persisted, and Harris again went to the front desk to alert Goodwin. Goodwin informed Harris that she would call the police.

After the first complaint, Aswell was dispatched to the motel. Rawls accompanied Aswell. Aswell went to the room and spoke to Riley Sutton who was alone at the time, but told the officer that he would tell Kenneth Sutton about the noise complaints when he returned.

There was a second complaint. Rawls and Aswell were again dispatched to the motel. After speaking to Goodwin, the officers were going up the stairs when they met several young men coming down the stairs from the room. Rawls spoke to them about the noise, and they agreed to leave the motel. As they were leaving, Harris came out of his room and confronted Rawls. Harris wanted to know which way the young men went because, apparently, one of them had hit his girlfriend's car.

Harris asked the officers if they were going to do anything about the alleged hit and run. Rawls stated that he had been standing there the whole time, and no one had hit the car. Harris went downstairs to inspect the car and saw scratches on the fender.

At this point, the stories of the respective parties markedly diverge. Rawls and Aswell claim that Harris was seeking to fight the boys that allegedly hit his girlfriend's car. Harris claims that he merely wanted to find out what had happened. According to Rawls and Aswell, Harris was angry and hostile in both his mannerisms and language. The officers maintain that Harris was yelling and using curse words. Harris admits that he may have used a few curse words during the encounter, but claims they were not directed at the officers specifically. Harris also denies displaying hostility or aggression. At this point, the officers believed that Harris was disturbing motel customers. Rawls told Harris that if he did not calm down and go back to his room, he would be arrested. After Harris continued to insist that the officers take action against the boys, the officers decided to arrest him.

Harris started back down the stairs. The officers each grabbed one of Harris' arms and were attempting to handcuff him. The video shows the respective parties at this point in the interaction.

2

The officers claim that Harris was tensing his arms to avoid being handcuffed while Harris denies resisting. It is not clear from the video whether Harris was tensing his arms. It is also unclear whether Harris was acting in an aggressive manner. What is clear from the video, however, is that Harris steers the officers–briefly–towards his girlfriend's car before coming to a stop and standing still. Then, Aswell deploys his Taser with the probes striking Harris in the back with a 5-second charge. The video then shows the officers attempting to ease Harris to the ground. After the tase, Aswell removed the probes, Rawls handcuffed Harris, and Aswell took him to jail. Harris vehemently denies actively resisting arrest, while the officers and Goodwin claim that Harris was being loud, aggressive, and resisting arrest.

On March 24, 2015, Harris filed this Complaint, alleging that the officers' actions amount to violations of federal and state law. [Doc. No. 1]. Harris claims that he has suffered injuries as a result of the tasing incident. Specifically, he claims that Defendants are liable for compensatory damages, general damages, special damages, and medical expenses, as well as the costs of this action.

On April 28, 2016, Defendants filed the instant Motion for Summary Judgment. [Doc. No. 11]. On May 24, 2016, Harris filed an opposition. [Doc. No. 14]. On June 7, 2016, Defendants filed a reply. [Doc. No. 18].

## II.   LAW AND ANALYSIS

### A.   Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Thus, Summary Judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also Ruiz v. Whirlpool, Inc.*, 12 F.3d 510, 513 (5th Cir. 1994) ("Testimony based on conjecture or speculation is insufficient to raise an issue of fact to defeat a summary judgment motion because 'there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'").

4

### B.    Excessive Force Claim and Qualified Immunity Standard

Harris initially claims that the tasing constituted excessive force in violation of the Fourth Amendment to the United States Constitution. In response, Rawls and Aswell contend that they are entitled to qualified immunity from monetary damages in their individual capacities. Qualified immunity is a doctrine that recognizes the difficulty of second guessing an officer's decisions in the field from the comfort of the judge's chambers. In that sense, it affords officers with ample room to make reasonable but mistaken legal judgments. *Rodriguez v. Bexar Cty. Hosp. Dist.*, 14-861, 2015 WL 77600209 at *21 (W.D. Tex. Nov. 30, 2015) (citations omitted). Importantly, once asserted by the defendant, the burden shifts to the plaintiff to show that the defense is inapplicable. *See McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013).

Courts employ a two-step procedure to gauge the applicability of qualified immunity. These steps can be reviewed in any order, but the underlying inquiries are whether the plaintiff has alleged facts sufficient to state a constitutional violation and whether, at the time of the incident, the contours of the right were clearly established so that *every* reasonable officer would understand what he was doing violates that right. *Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 471 (5th Cir. 2014). On the other hand, the clearly established prong does not necessarily require a case "'directly on point.'" *See Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Still, precedent must have placed the pertinent constitutional issue beyond debate. *Ashcroft*, 563 U.S. at 741. Indeed, the qualified immunity defense will protect all but the "plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 340 (1986).

Importantly, on a motion for summary judgment seeking qualified immunity, the Court still

views the record in the light most favorable to the non-movant. The Supreme Court has stated that "[o]ur qualified immunity cases illustrate the importance of drawing inferences in favor of the nonmovant..." *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014). Finally, in accordance with Fifth Circuit instruction, the Court conducts a separate qualified immunity analysis with respect to each officer. *Meadours v. Ermels*, 483 F.3d 417, 423 (5th Cir. 2007) (citing *Hernandez v. Tex. Dep't of Protective and Reg. Servs.*, 380 F.3d 872, 883-84 (5th Cir. 2004); *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005); *Tarver v. City of Edna*, 410 F.3d 745, 752-54 (5th Cir. 2005)).

### 1.      *Aswell*

The Court first addresses whether Harris has alleged facts showing a constitutional violation on the part of Aswell, the officer who actually deployed the taser. "When a plaintiff alleges excessive force during an investigation or arrest, the...right at issue is the Fourth Amendment right against unreasonable seizures." *Tolan,* 134 S.Ct. at 1865 (citing *Graham*, 490 U.S. at 394). A Fourth Amendment excessive force claim presents the court with a legal question of whether the officer's conduct was reasonable. To establish an excessive force claim, Harris must show "(1) [an] injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009). "Excessive force claims are necessarily fact intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Id.* at 167. (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). At its heart, an excessive force claim asks the Court to balance the state's interest in the intrusion with the individual's interest against the intrusion.

Three factors are particularly important when examining the state's interest, (1) the severity

of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham,* U.S. 386 at 394-95.  Along those lines, Fifth Circuit precedent also asks whether the officers, in applying the force, were responding with "measured and ascending actions that corresponded to [the suspect's] escalating verbal and physical resistence." *Pratt v. Harris Cty., Tex*., 15-20080, 2016 WL 2343032 at *5 (5th Cir. May 3, 2016) (quoting *Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012)).

Employing those precepts, and taking Harris' word as true to the extent it is not expressly contradicted by the video recording of the incident, there are issues of fact as to whether Aswell committed a constitutional violation.

First, Harris was arrested for a minor crime: disturbing the peace. This factor weighs in favor of finding a constitutional violation. *See Carter v. City of Carlsbad*, 799 F.Supp.2d 1147, 1157 (S.D. Cal. 2011) (finding misdemeanor offense will generally weigh against reasonableness of using taser in dart mode to apprehend suspect); *see also Davis v. City of Las Vegas*, 478 F.3d 1048, 1055 (9th Cir. 2007) (noting that trespassing and obstructing police officer were not severe crimes); *Massey v. Wharton*, 477 Fed. App'x. 256, 263 (5th Cir. 2012).

Second, whether Harris posed a threat to the officers or others is unclear. The officers testified that Harris wanted to fight those he believed to have hit his girlfriend's car. However, Harris testified that he made no such comments. The video testimony–while difficult to make out–shows Harris veering to the right as each officer held onto one of his arms. But, it also shows a period during which he remained still before being tased. In somewhat similar circumstances, the Fifth Circuit refused to find a suspect constituted a threat. *See Ramirez v. Martinez*, 716 F.3d 369, 378 (5th

7

Cir. 2013) (finding that a suspect pulling his arm out of an officer's grasp, without more, is insufficient to find an immediate threat to the safety of the officers). Thus, at this stage in the proceeding–assuming Harris' testimony is true–the second factor weighs in favor of finding a constitutional violation.

Last, the officers contend Harris was resisting arrest by tensing his arms and refusing to cooperate. Harris claims that he was compliant. The video evidence is not very helpful because it only captured the end of the incident. At that point, as noted, it shows Harris with an officer holding onto each of his arms as he veers slightly to the right. Then, Harris is momentarily still before being tased. The video is inconclusive.  However, taking Harris' testimony as true pushes him past summary judgment: there are issues of fact as to whether Harris was resisting arrest.[1] Thus, there are issues of fact with respect to whether there was a constitutional violation, and the Court turns to the second prong of the qualified immunity analysis.

The second prong of the analysis asks whether the right at issue was clearly established at the time of the allegedly unconstitutional conduct. Courts have held that an officer has fair notice of the factors used in gauging whether force is excessive in the constitutional context. *See Autin*, 174 Fed. App'x. 183, 186. ("when discussing the law of excessive force, the Supreme Court and this circuit typically emphasize the three factors discussed above. A reasonable officer is charged with

---

[1]Defendants argue that because there is video tape evidence capturing some of the encounter, the Court should discount Harris' testimony that he was not resisting arrest. They cite *Scott v. Harris*, 550 U.S. 372 (2007), in support. There, the Supreme Court held that the plaintiff's version of the facts was so "blatantly contradicted" by the video evidence that no "reasonable jury" could believe him. *Id*. at 380. That is not the case here. The video evidence is inconclusive and does not blatantly contradict Harris' testimony that he was compliant. *See Ramirez*, 716 F.3d at (dismissing argument that Court should not view record in light most favorable to non-movant where video evidence exists if the video evidence is inconclusive).

knowing that, as clearly established law, these are factors that tend to indicate whether the use of force is appropriate."); *see also  Wharton*, 477 Fed. App'x. at 263; *Rakestrau v. Neustrom*, 11-1762, 2013 WL 1452030 at *10 (W.D. La. Apr. 8, 2013) (same).

Here, because the offense was minor and there are factual issues with respect to the threat Harris posed, and whether he was resisting arrest when he was tased, qualified immunity is inappropriate for Aswell. Moreover, when resolving the factual issues in Harris' favor, the record does not demonstrate that Aswell was responding to the situation with measured and ascending actions that corresponded to Harris' escalating verbal and physical resistence. This is so because the record viewed most favorable to Harris shows that, if he was resisting arrest, he had arguably stopped resisting before the tasing. His resistence was not necessarily escalating in intensity. Thus, to the extent Defendants seek qualified immunity for Aswell on Harris' Fourth Amendment excessive force claim, their Motion for Summary Judgment is DENIED.

### 2. *Rawls*

The Court next addresses whether Rawls–the non-tasing officer–is entitled to qualified immunity. Harris' excessive force claim stems from the tase and his perceived free fall, not the actions which preceded the tase.  The video shows that officers attempted to break Harris' fall, undermining any excessive force claim related to Harris' treatment after Aswell deployed the taser. Thus, Rawls did not actively employ excessive force. However, when faced with similar situations, courts have refused qualified immunity to an officer who, while not employing the force, fails to intervene to stop it. *See Estate of Booker v. Gomez*, 745 F.3d 405, 421 (10th Cir. 2014); *Sanchez v. City of Chicago*, 700 F.3d 919, 926 (7th Cir. 2012); *Hale v. Townley*, 19 F.3d 1068, 1075 (5th Cir. 1994). Accordingly, because the Court has found issues of fact with respect to Aswell's use of force,

and because there is no indication that Rawls took reasonable measures to protect Harris from that force, to the extent Defendants' seek qualified immunity for Rawls on Harris' Fourth Amendment excessive force claim, their Motion for Summary Judgment is also DENIED.

### C.      False Arrest

In his memorandum in opposition to summary judgment, Harris–for the first time– raises a false arrest claim. Defendants argue that the Court should not address these claims because the time to amend pleadings in this case has passed.

Under Fifth Circuit precedent, "when a claim is raised for the first time in response to a summary judgment motion, the district court should construe that claim as a motion to amend the complaint under Federal Rule of Civil Procedure 15(a)." *Riley v. School Bd. Union Parish*, 379 Fed. App'x. 335, 341 (5th Cir. 2010) (citing *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 989 n. 2 (5th Cir. 2008); *Sherman v. Hallbauer*, 455 F.2d 1236, 1242 (5th Cir. 1972)). Rule 15(a) provides that motions to amend should be granted liberally whenever justice so requires. However, leave to amend, is not automatically granted. Rather, "a decision to grant leave is within the discretion of the trial court,...and [i]n deciding whether to grant such leave, the court may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962); *Overseas Inns S.A. P.A. v. United States*, 911 F.2d 1146, 1150 (5th Cir. 1990); *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. 1981); *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 546 (5th Cir. 1980). In the instant case, the Court will GRANT the motion to amend because the underlying claim may be meritorious and will give

Harris leave to amend his Complaint.[2]

The Fourth Amendment protects persons against arrests not supported by probable cause. A suspect is arrested in the constitutional sense "if a reasonable person in the suspect's position would understand the situation to be a restraint on freedom of the kind that the law typically associates with a formal arrest." *Freeman v. Gore*, 483 F.3d 404, 413 (5th Cir. 2007) (citing *United States v. Corral-Franco*, 848 F.2d 536, 540-41 (5th Cir. 1988); *United States v. Bengivenga*, 845 F.2d 593, 596-97 (5th Cir. 1988). "A warrantless arrest in a public place satisfies the Fourth Amendment if the offense committed is a felony, or if it is a misdemeanor committed in the arresting officer's presence, and probable cause supports the arrest." *Vinas v. Serpas*, 10-3211, 2012 WL 2135286 at *2 (E.D. La. June 12, 2012) (citing *Maryland v. Pringle*, 540 U.S. 366, 369-70 (2003)). "Probable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'" *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004) (citation omitted). While probable cause does not require proof beyond a reasonable doubt, something more than a bare suspicion of wrongdoing is required. *See U.S. v. Banuelos-Romero*, 597 F.3d 763, 768 (5th Cir. 2010). In applying this law to the facts, the inferences and deductions of the trained police officer should be given deference. *United States v. Sanchez-Pena*, 336 F.3d 431, 437 (5th Cir. 2003).

Rawls and Aswell arrested Harris, initially, for disturbing the peace. Louisiana Revised Statute §14:103 provides:

A.    Disturbing the peace is doing any of the following in such manner as would foreseeably disturb or alarm the public:

---

[2]Even though the Complaint has not yet been amended, out of an abundance of caution, the Court addresses Defendants' substantive arguments with respect to the false arrest claim.

(2)     Addressing any offensive, derisive, or annoying words to any person who is lawfully in any street, or other public place; or call him by any offensive or derisive name, or make any noise or exclamation in his presence and hearing with the intent to deride, offend, or annoy him, or to prevent him from pursuing his lawful business, occupation, or duty...

Court have interpreted this provision to encapsulate behavior which is "'violent or boisterous in itself, or which is provocative in the sense that it indicates a foreseeable physical disturbance.'" *State v. Jordan*, 369 So.2d 1347, 1350 (La. 1979) (quoting *Garner v. State of La.*, 368 U.S. 157 (1961)).

In this case, about the only thing that the parties agree on is that Harris was using profanity. However, Harris maintains it was not directed at the police officers or anyone else, which would take it out of the statute's ambit. Moreover, although certain curse words–when uttered in a provocative manner–can support a disturbing the peace charge, there is no indication from the cited record of what words Harris used. Louisiana courts refuse to find a criminal violation when the actual words used are not disclosed. *See State v. McCoy*, 546 So.2d 240, 243 (La. App. 2 Cir. 6/14/89). Finally, Harris denies displaying aggression or hostility, further undermining probable cause to arrest for disturbing the peace. The record as currently developed and viewed in light most favorable to Harris, does not support a finding of probable cause to arrest for disturbing the peace.  Because both Rawls and Aswell secured Harris in an attempt to handcuff him, they both arrested him in the constitutional sense, and the Court proceeds to the second prong of the analysis with respect to both officers.

At the second stage of the analysis, the question becomes whether officers of reasonable competence could disagree on the existence of probable cause when looking at the factual record in a light most favorable to Harris. *See Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994) (citing *Malley v. Briggs*, 475 U.S. 335 (1986)). If reasonable officers could disagree with respect to probable

12

cause, qualified immunity is appropriate. Still, that question must be asked in a manner which views the record in the non-movant's (Harris') favor. Because Defendants adequately plead the defense, the burden is on Harris to show it is inapplicable.

Viewing the record most favorable to Harris, after discovering his girlfriend's car had been hit, he asked the officers whether they were going to do anything about it. He then advised the officers that he wished to go after the boys to find out what happened. Harris claims that he remained calm throughout the encounter. He admits to using profanity, but not directing it at the officers. It is unclear from the cited record exactly what language was used.

Under Harris' version of the facts, the Court finds qualified immunity is inappropriate. Harris has sufficiently noted factual disputes sufficient to meet his burden *at this stage of the litigation*. The defense will still be available at trial where the finder of fact will be able to make judgments as to credibility and weigh the evidence–tasks the Court is constrained from undertaking in the summary judgment context. *See Johnson v. Breeden*, 280 F.3d 1308, 1317 (11th Cir. 2002) ("Defendants who are not successful with their qualified immunity defense before trial can re-assert it at the end of the plaintiff's case in a Rule 50(a) motion.") (citations omitted). Thus, to the extent Defendants seek qualified immunity from Harris' false arrest claim, their Motion for Summary Judgment is DENIED.

### D.    *Monell* Liability

Harris also seeks to impose liability on the City of Bastrop for his injuries. Importantly, a municipality will not incur liable for the acts of its employees under federal law. *Respondeat superior* has no place in Section 1983 litigation. *Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997). Thus, to attribute fault to the municipality, Harris must prove the existence of a policy maker, an official policy, and a violation of his constitutional rights resulting from that policy

13

or custom. *See Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978)).

Harris appears to make two arguments for municipal liability. Neither is persuasive and both fall far short of establishing an issue for trial. First, Harris contends that the City of Bastrop should be liable for the actions of Rawls because its policies of hiring, supervision, and training were inadequate. In support, Harris relies solely on the fact that he was tased.

"Each of [Harris'] claims that the city Defendants failed to hire, train and supervise [Rawls and Aswell] adequately or to promulgate constitutionally adequate policies are analyzed under the same standards." *Barrios-Barrios v. Clipps*, 825 F.Supp.2d 730, 745 (E.D. La. 2011) (citations omitted). To succeed on this type of claim, Harris must show: (1) the training or hiring procedures of the municipality's policymakers were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the hiring or training policy, and (3) the inadequate hiring or training policy directly caused the plaintiff's injury. *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996).

Harris fails to introduce evidence on the inadequate training or hiring procedures of the City. Instead he claims that Rawls and Aswell failed to abide by their training. This, of course, would weigh in favor of finding that the incident was caused by a rogue officer as opposed to problems with the City's hiring, training, or supervision programs. Further, Harris makes no attempt to explain how the allegedly deficient policies were borne of deliberate indifference. "Deliberate indifference is more than mere negligence." *Connor v. Travis Cty.*, 209 F.3d 794, 796 (5th Cir. 2000) (citing *Rhyne v. Henderson Cty.*, 973 F.2d 386, 392 (5th Cir. 1992). Harris must show that, "in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the

14

inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Benavides v. Cty. of Wilson*, 955 F.2d 968, 972 (5th Cir. 1992).

Importantly, "[p]roof of more than a single instance of lack of supervision causing a violation of constitutional rights is required before such lack of training can constitute deliberate indifference." *Lewis v. Pugh*, 289 Fed. App'x. 767, 772 (5th Cir. 2008) (citing *Thompson v. Upshur Cty.*, 245 F.3d 447, 458 (5th Cir. 2001); *see also Gabriel v City of Plano*, 202 F.3d 741, 745 (5th Cir. 2000) ("We have consistently rejected application of the single incident exception and have noted that 'proof of a single violent incident ordinarily is insufficient to hold a municipality liable for inadequate training.'") (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)); *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003) ("deliberate indifference generally requires that a plaintiff demonstrate 'at least a pattern of similar violations' arising from training that is so clearly inadequate as to be 'obviously likely to result in a constitutional violation.") (citation omitted).

Here, Harris does not explain how his incident demonstrates deliberate indifference. A plaintiff seeking to prevail on such a theory must demonstrate some evidence of a glaring omission in the training program. In line with Supreme Court precedent, courts rarely find deliberate indifference based on a single incident unless there is evidence that the officers at issue had "a propensity for using excessive force, violence, or were otherwise reckless." *Valle v. City of Houston*, 613 F.3d 536, 549 (5th Cir. 2010). There is no such evidence here. Nor is there any evidence to suggest the need for further or different training was obvious. Because he does not show that the deficiency in the training, supervision, or hiring was "obvious" and  the "inadequacy so likely to result in violations constitutional rights that the policymakers of the city can reasonably be said to

15

have ben deliberately indifferent to the need," summary judgment is appropriate on the failure to train, hire, and supervise claim. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

Harris also makes a ratification argument, essentially arguing that the City of Bastrop's failure to discipline Rawls and Aswell after the accident shows that it condones or supports this type of conduct. The ratification theory of municipal liability stems from *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988), in which the Supreme Court held that "[i]f the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." However, the Fifth Circuit has limited this theory to "extreme factual situations." *Coon v. Ledbetter*, 780 F.2d 1158, 1161 (5th Cir. 1986).

The seminal case in Fifth Circuit jurisprudence is *Grandstaff v. City of Borger*, 767 F.2d 161 (1985). There, the municipality refused to take action despite the unique factual circumstances: in response to a minor traffic violation, three patrol cars engaged in a high-speed chase during which they fired wildly at the suspect; the object of this chase took refuge on an innocent person's ranch, where the entire night shift of the city police force covered and proceeded to direct hails of gunfire at anything that moved, killing the innocent rancher as he emerged from his own vehicle. The Fifth Circuit found that the municipality had ratified the actions of the officers by not taking any action, despite the egregious and patently unconstitutional conduct of the officers. That case must be compared with the vast majority of cases refusing to find the "extreme factual situations" needed to support the ratification theory. For example, in *McIntosh v. Smith*, 690 F.Supp.2d 515 (S.D. Tex. 2010), the federal district court refused to find extreme factual circumstances as a matter of law when plaintiff was merely tased by an officer.

So too here, a five-second tase under ambiguous circumstances does not–as a matter of

16

law–amount to the kind of extreme factual situation which would allow the ratification theory to succeed. *See also Snyder*, 142 F.3d at 798 (no extreme factual situation where officer shot fleeing subject in the back). And although Harris claims that Rawls and Aswell should have been reprimanded, this decision is not enough to show ratification. *See Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, n. 2 (5th Cir. 2009); *Kibbe v. City of Springfield*, 777 F.2d 801, 809 n. 7 (1st Cir. 1985) ("We are unconvinced that a failure to discipline Perry or other officers amounts to the sort of ratification from which a jury properly could infer municipal policy."). Accordingly, to the extent Defendants seek dismissal of Harris' Section 1983 municipal liability claims, their Motion for Summary Judgment is GRANTED, and those claims are DISMISSED WITH PREJUDICE.

### E.    Conspiracy

Harris next claims that Aswell, Rawls, the City of Bastrop, and the Bastrop Police Department conspired to threaten and did threaten him with malicious prosecution if he filed suit against the City and its police department. He further claims that this conspiracy was intended to deprive him of equal protection. Accordingly, his claim falls under Section 1985.

A successful claim under Section 1985 requires a plaintiff to prove the following by a preponderance of the evidence: (1) a conspiracy; (2) for the purpose of depriving a person of equal protection under the laws; (3) an act in furtherance of the conspiracy; (4) which causes injury or a deprivation of a right or privilege; and (5) that the conspiracy has a racially-based animus. *Lockett v. New Orleans City*, 607 F.3d 992, 1002 (5th Cir. 2010) (citing *Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994)).

In this case, Harris has failed to even allege racial animus, much less introduce any evidence in support of such a theory. Thus, to the extent Defendants move for summary judgment on Harris'

conspiracy claim, their motion is GRANTED and that claim is DISMISSED WITH PREJUDICE.

### F.      State Law Claims

In addition to the federal law claims, Harris also asserts a bevy of potential state law causes of action including battery, negligence, intentional infliction of emotional distress, and Louisiana civil rights violations. Defendants move for summary judgment on these claims. The Court addresses each in turn.

#### 1.      *Battery*

Harris claims that the tase amounts to a battery under Louisiana law. Defendants move for summary judgment on this claim. They argue that, because there is no evidence to support an excessive force claim, there is no evidence to support a battery claim. Their premise is faulty because there are factual issues with respect to the excessive force claim.

When such tort claims are raised against a law enforcement officer during the course of an arrest, Louisiana law requires a plaintiff to show that the law enforcement officer acted with unreasonable or with excessive force. "Whether the force used is reasonable depends on the totality of the facts and circumstances in each case." *Elphange v. Gautreaux*, 969 F.Supp.2d 493, 515 (M.D. La. 2013). Factors to consider include "(1) the known character of the arrestee, (2) the risks and dangers faced by the officers, (3) the nature of the offense involved, (4) the chance of the arrestee's escape if the particular means are not employed, (5) the existence of alternative methods of arrest, (6) the physical size, strength, and weaponry of the officers compared to the arrestee, and (7) the exigencies of the moment." *Kyle v City of New Orleans*, 353 So.2d 969, 971 (La. 1977).

The Fifth Circuit has held that these factors are sufficiently similar to the reasonableness

factors in the constitutional context as to foreclose the need for a separate analysis. See *Elphanage*, 969 F.Supp.2d at 515-16. (Citation omitted). Accordingly, because there are issues of fact precluding a finding that the officers' conduct was objectively reasonable for purposes of the constitutional analysis, Defendants' Motion for Summary Judgment on the battery claim is DENIED.

### 2.  *Negligence*

Defendants next move for summary judgment on Harris' negligence claim. Under Louisiana law, negligence claims are subject to a duty risk analysis containing five elements: "(1) whether the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) whether the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) whether the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) whether the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element; and (5) whether the plaintiff was damaged (the damages element)." *Hanks v. Entergy Corp*., 944 So.2d 564, 579 (La. 2006). Ultimately, "[a] police officer has a duty to act reasonably under the totality of the circumstances." *Mathieu v. Imperial Toy Corp*., 646 So.2d 318, 322-23 (La. 1994).

Defendants make no new argument on this claim; they simply argue that the standard for negligence is essentially the same as that for reasonableness under the Fourth Amendment. And, according to Defendants, because there is no factual issue with respect to reasonableness in the Fourth Amendment context, there is no issue of fact with respect to state law negligence. However, the Court has found issues of fact with respect to the excessive force claim. Accordingly, Defendants' Motion for Summary Judgment on Harris' negligence claim is DENIED.

### 3.  *Intentional Infliction of Emotional Distress*

To establish an intentional infliction of emotional distress claim under Louisiana law, Harris must show "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto*, 585 So.2d 1205, 1209 (La. 1991). To succeed on an intentional infliction of emotional distress claim, the defendant's conduct "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Glenn v. Boy Scouts of America*, 977 F.Supp. 786, 789 (W.D. La. 1997) (citations omitted). Moreover, the distress suffered must be so severe "'that no reasonable person could be expected to endure it.'" *Robinson v. St. Tammany Parish Public Sch. Sys.*, 983 F.2d 835, 850 (E.D. La. 2013) (quoting *White*, 585 So.2d at 1210). The defendant must have also intended to cause the severe emotional distress. *Griffith v. La.*, 808 F.2d 926, 935 (E.D. la. 2011) (citation omitted).

Harris analyzes his intentional infliction of emotional distress claim in a terse fashion–essentially listing the elements of the claim followed by conclusory assertions that the instant facts fit comfortably within those elements. Defendants argue that this lack of analysis entitles them to summary judgment. The Court agrees. Harris' claim falls short of the mark because he introduces no evidence as to the severity of his emotional distress and fails to specifically articulate how the officers' conduct was extreme or outrageous. Given the high burden on plaintiffs for such a claim and this lack of evidence and argument, Defendants' Motion for Summary judgment on the intentional infliction of emotional distress claim is GRANTED, and that claim is DISMISSED WITH PREJUDICE.

20

### 4.    *Louisiana Civil Rights Violations*

In his Complaint, Harris maintains that the actions of Rawls and Aswell violated his rights, not only under the federal constitution, but also under Louisiana's constitution. Defendants move for summary judgment on these claims for the same reasons they moved for summary judgment on Harris' Section 1983 claims. In his memorandum in opposition, Harris does not address the Louisiana civil rights claims. Instead, he suggests that he is no longer asserting these claims. However, in an abundance of caution, the Court addresses them.

"Art. I, § 5 of Louisiana's Constitution protects against unreasonable searches and seizures and is, therefore, analogous to the federal Fourth Amendment. The qualified immunity analysis applied by courts to Fourth Amendment § 1983 claims applies equally to Louisiana constitutional law claims." *Thomas v. Town of Jonesville*, 11-408, 2013 WL 265235 at *6 (W.D. La., Jan. 23, 2013). In this case, summary judgment is inappropriate with respect to Harris' state law constitutional claims because the legal standards for analyzing these claims is the same as the standard for analyzing the Section 1983 claims. Accordingly, Defendants' Motion for Summary Judgment is DENIED to the extent they seek dismissal and/or qualified immunity from Harris' claims founded on violations of the Louisiana constitution.[3]

### 5.    *City of Bastrop–Vicarious Liability*

Louisiana tort law does not recognize the same limitations on vicarious liability found in Section 1983 jurisprudence. *See Deville* 567 F.3d at 173 ("Municipalities do not enjoy special protection from vicarious liability under Louisiana law and are subject to *respondeat superior* like

---

[3]If it is Harris' intent to dismiss these state constitutional claims, he should file a motion or otherwise address this issue prior to the pre-trial conference.

every other employer."). Thus, the City of Bastrop can be held liable for the torts of its officers if they were committed within the course and scope of their employment. Defendants failed to brief this claim. Accordingly, Defendants' Motion for Summary Judgment is DENIED to the extent they seek dismissal of this claim against the City of Bastrop.

> ### G.    The Bastrop Police Department

In a brief footnote, Defendants indicate that the Bastrop Police Department is not an entity capable of being sued in federal court. They are correct. *See Norwood v. City of Hammond*, 99-879, 1999 WL 777713 at *3 (E.D. La. Sept. 30, 1999). However, they do not appear to formally move for this party's dismissal. Because the Bastrop Police Department does not appear to be amendable to suit, the Court intends to *sua sponte* DISMISS this party. Harris shall have ten days from the date of this Ruling to file any opposition. If no opposition is filed, the Court will dismiss the Bastrop Police Department.

## III.    CONCLUSION

For the foregoing reasons, Harris' motion to amend, contained in his memorandum in opposition to Defendants' Motion for Summary Judgment [Doc. No. 14] is GRANTED. Harris shall have fourteen days from the date of this Ruling to file an amended Complaint to assert a false arrest claim. Defendants' Motion for Summary Judgment [Doc. No. 11] is GRANTED IN PART and DENIED IN PART. To the extent Defendants move for summary judgment on Harris' 42 U.S.C. § 1983 municipal liability claims, 42 U.S.C. § 1985 conspiracy claim, and intentional infliction of emotional distress claim under Louisiana law, their motion is GRANTED, and those claims are DISMISSED WITH PREJUDICE. Defendants' motion is otherwise DENIED. Finally, the Court gives notice of its intent to *sua sponte* dismiss the Bastrop Police Department from this suit. Harris

has ten days from the date of this Ruling to file an opposition memorandum if he so chooses. If no opposition is filed, the Court will dismiss the Bastrop Police Department.

MONROE, LOUISIANA, this 19th day of July, 2016.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE